UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
LONDON

**Eastern District of Kentucky**
**F I L E D**

DEC 20 2006

AT LONDON
LESLIE G. WHITMER
CLERK U.S. DISTRICT COURT

CIVIL ACTION NO. 06-18-GWU

CHRISTOPHER GADLAGE,                                   PLAINTIFF,

VS.                        **MEMORANDUM OPINION**

JO ANNE B. BARNHART,
COMMISSIONER OF SOCIAL SECURITY,                DEFENDANT.

## INTRODUCTION

The plaintiff brought this action to obtain judicial review of an administrative

denial of his application for and Supplemental Security Income (SSI). The appeal

is currently before the Court on cross-motions for summary judgment.

## APPLICABLE LAW

The Sixth Circuit Court of Appeals has set out the steps applicable to judicial

review of Social Security disability benefit cases:

1.    Is the claimant currently engaged in substantial gainful activity?
      If yes, the claimant is not disabled. If no, proceed to Step 2.
      See 20 C.F.R. 404.1520(b), 416.920(b).

2.    Does the claimant have any medically determinable physical
      or mental impairment(s)? If yes, proceed to Step 3. If no, the
      claimant is not disabled. See 20 C.F.R. 404.1508, 416.908.

3.    Does the claimant have any severe impairment(s)--i.e., any
      impairment(s) significantly limiting the claimant's physical or
      mental ability to do basic work activities? If yes, proceed to
      Step 4. If no, the claimant is not disabled. See 20 C.F.R.
      404.1520(c), 404.1521, 416.920(c), 461.921.

1

4.     Can the claimant's severe impairment(s) be expected to result
       in death or last for a continuous period of at least 12 months?
       If yes, proceed to Step 5. If no, the claimant is not disabled.
       See 20 C.F.R. 404.920(d), 416.920(d).

5.     Does the claimant have any impairment or combination of
       impairments meeting or equaling in severity an impairment
       listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 (Listing of
       Impairments)? If yes, the claimant is disabled. If no, proceed
       to Step 6.     See 20 C.F.R. 404.1520(d), 404.1526(a),
       416.920(d), 416.926(a).

6.     Can the claimant, despite his impairment(s), considering his
       residual functional capacity and the physical and mental
       demands of the work he has done in the past, still perform this
       kind of past relevant work? If yes, the claimant was not
       disabled.  If no, proceed to Step 7.  See 20 C.F.R.
       404.1520(e), 416.920(e).

7.     Can the claimant, despite his impairment(s), considering his
       residual functional capacity, age, education, and past work
       experience, do other work--i.e., any other substantial gainful
       activity which exists in the national economy? If yes, the
       claimant is not disabled.   See 20 C.F.R. 404.1505(a),
       404.1520(f)(1), 416.905(a), 416.920(f)(1).

Garner v. Heckler, 745 F.2d 383, 387 (6th Cir. 1984).

Applying this analysis, it must be remembered that the principles pertinent

to the judicial review of administrative agency action apply.  Review of the

Commissioner's decision is limited in scope to determining whether the findings of

fact made are supported by substantial evidence. Jones v. Secretary of Health and

Human Services, 945 F.2d 1365, 1368-1369 (6th Cir. 1991). This "substantial

evidence" is "such evidence as a reasonable mind shall accept as adequate to

2

Gadlage

support a conclusion;" it is based on the record as a whole and must take into account whatever in the record fairly detracts from its weight. Garner, 745 F.2d at 387.

One of the detracting factors in the administrative decision may be the fact that the Commissioner has improperly failed to accord greater weight to a treating physician than to a doctor to whom the plaintiff was sent for the purpose of gathering information against his disability claim. Bowie v. Secretary, 679 F.2d 654, 656 (6th Cir. 1982). This presumes, of course, that the treating physician's opinion is based on objective medical findings. Cf. Houston v. Secretary of Health and Human Services, 736 F.2d 365, 367 (6th Cir. 1984); King v. Heckler, 742 F.2d 968, 973 (6th Cir. 1984). Opinions of disability from a treating physician are binding on the trier of fact only if they are not contradicted by substantial evidence to the contrary. Hardaway v. Secretary, 823 F.2d 922 (6th Cir. 1987). These have long been well-settled principles within the Circuit. Jones, 945 F.2d at 1370.

Another point to keep in mind is the standard by which the Commissioner may assess allegations of pain. Consideration should be given to all the plaintiff's symptoms including pain, and the extent to which signs and findings confirm these symptoms. 20 C.F.R. Section 404.1529 (1991). However, in evaluating a claimant's allegations of disabling pain:

> First, we examine whether there is objective medical evidence of an underlying medical condition. If there is, we then examine: (1)

3

> whether objective medical evidence confirms the severity of the alleged
> pain arising from the condition; or (2) whether the objectively
> established medical condition is of such a severity that it can
> reasonably be expected to produce the alleged disabling pain.

Duncan v. Secretary of Health and Human Services, 801 F.2d 847, 853 (6th Cir.

1986).

Another issue concerns the effect of proof that an impairment may be

remedied by treatment. The Sixth Circuit has held that such an impairment will not

serve as a basis for the ultimate finding of disability. Harris v. Secretary of Health

and Human Services, 756 F.2d 431, 436 n.2 (6th Cir. 1984). However, the same

result does not follow if the record is devoid of any evidence that the plaintiff would

have regained his residual capacity for work if he had followed his doctor's

instructions to do something or if the instructions were merely recommendations.

Id. Accord, Johnson v. Secretary of Health and Human Services, 794 F.2d 1106,

1113 (6th Cir. 1986).

In reviewing the record, the Court must work with the medical evidence before

it, despite the plaintiff's claims that he was unable to afford extensive medical work-

ups. Gooch v. Secretary of Health and Human Services, 833 F.2d 589, 592 (6th Cir.

1987). Further, a failure to seek treatment for a period of time may be a factor to be

considered against the plaintiff, Hale v. Secretary of Health and Human Services,

816 F.2d 1078, 1082 (6th Cir. 1987), unless a claimant simply has no way to afford

4

Gadlage

or obtain treatment to remedy his condition, McKnight v. Sullivan, 927 F.2d 241, 242 (6th Cir. 1990).

Additional information concerning the specific steps in the test is in order.

Step six refers to the ability to return to one's past relevant category of work. Studaway v. Secretary, 815 F.2d 1074, 1076 (6th Cir. 1987). The plaintiff is said to make out a prima facie case by proving that he or she is unable to return to work. Cf. Lashley v. Secretary of Health and Human Services, 708 F.2d 1048, 1053 (6th Cir. 1983). However, both 20 C.F.R. 416.965(a) and 20 C.F.R. 404.1563 provide that an individual with only off-and-on work experience is considered to have had no work experience at all. Thus, jobs held for only a brief tenure may not form the basis of the Commissioner's decision that the plaintiff has not made out its case. Id. at 1053.

Once the case is made, however, if the Commissioner has failed to properly prove that there is work in the national economy which the plaintiff can perform, then an award of benefits may, under certain circumstances, be had. E.g., Faucher v. Secretary of Health and Human Services, 17 F.3d 171 (6th Cir. 1994). One of the ways for the Commissioner to perform this task is through the use of the medical vocational guidelines which appear at 20 C.F.R. Part 404, Subpart P, Appendix 2 and analyze factors such as residual functional capacity, age, education and work experience.

5

Gadlage

One of the residual functional capacity levels used in the guidelines, called "light" level work, involves lifting no more than twenty pounds at a time with frequent lifting or carrying of objects weighing up to ten pounds; a job is listed in this category if it encompasses a great deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls; by definition, a person capable of this level of activity must have the ability to do substantially all these activities. 20 C.F.R. 404.1567(b). "Sedentary work" is defined as having the capacity to lift no more than ten pounds at a time and occasionally lift or carry small articles and an occasional amount of walking and standing. 20 C.F.R. 404.1567(a), 416.967(a).

However, when a claimant suffers from an impairment "that significantly diminishes his capacity to work, but does not manifest itself as a limitation on strength, for example, where a claimant suffers from a mental illness . . . manipulative restrictions . . . or heightened sensitivity to environmental contaminants . . . rote application of the grid [guidelines] is inappropriate . . ." Abbott v. Sullivan, 905 F.2d 918, 926 (6th Cir. 1990). If this non-exertional impairment is significant, the Commissioner may still use the rules as a framework for decision-making, 20 C.F.R. Part 404, Subpart P, Appendix 2, Rule 200.00(e); however, merely using the term "framework" in the text of the decision is insufficient, if a fair reading of the record reveals that the agency relied entirely on the grid. Ibid. In such cases, the agency

6

may be required to consult a vocational specialist. Damron v. Secretary, 778 F.2d 279, 282 (6th Cir. 1985). Even then, substantial evidence to support the Commissioner's decision may be produced through reliance on this expert testimony only if the hypothetical question given to the expert accurately portrays the plaintiff's physical and mental impairments. Varley v. Secretary of Health and Human Services, 820 F.2d 777 (6th Cir. 1987).

## DISCUSSION

The plaintiff, Christopher Gadlage, was found by an Administrative Law Judge (ALJ) to have a "severe" combination of impairments, consisting of discogenic and degenerative disorders of the lumbar spine (status post L5 laminectomy and L5-S1 posterior fusion), a history of gout, and a history of polysubstance abuse. (Tr. 13). Nevertheless, based in part on the testimony of a vocational expert (VE), the ALJ determined that Mr. Gadlage retained the residual functional capacity to return to his past relevant work as a telemarketer and, therefore, was not entitled to benefits. (Tr. 18-21). The Appeals Council declined to review, and this action followed.

At the administrative hearing, the ALJ had asked the VE whether a person of the plaintiff's age, education, and work experience could perform any jobs if he were limited to "light" level exertion, and also had the following non-exertional impairments. (Tr. 458-9). He: (1) could not climb ladders, ropes, or scaffolds; and (2) could only occasionally stoop, crouch, crawl, kneel, or climb ramps or stairs.

7

(Id.). The VE responded that an individual with these restrictions could perform the plaintiff's past work as a telemarketer. (Id.). In the alternative, the VE identified other light level jobs the person could perform, and proceeded to give the numbers in which they existed in the state and national economies. (Tr. 460).

On appeal, this Court must determine whether the administrative decision is supported by substantial evidence.

Mr. Gadlage, who originally alleged disability because of pain from gout (Tr. 69), submitted medical evidence concerning this condition, as well as lower back pain which resulted in a spinal fusion of the L5-S1 vertebrae by Dr. Brett Scott in October 2004 (Tr. 395-7) and a diagnosis of right carpal tunnel syndrome based on an EMG/NCV study by Dr. Rahul Dixit on June 24, 2004 (Tr. 432).

However, the only examining source to list any specific physical restrictions was a consultative examiner, Dr. W. Roy Stauffer, who examined Mr. Gadlage on December 10, 2003 prior to his final fusion. (Tr. 160). He found that Mr. Gadlage weighed 295 pounds at a height of 72 inches, and used a cane during the examination due to complaints of right hip and foot pain; however, the physician questioned whether the cane was necessary for "minimal exertion." (Tr. 161). Dr. Stauffer found no deformity, heat, redness or nodes present in the joints, but there was generalized tenderness of the hands and feet and there was a reduced range of motion and pain in the neck, hips, ankles, and lumbosacral spine. (Id.). His gait

8

was "antalgic with his cane," and motor strength in the right hand was reduced to 4/5; all other "strengths and grips" were 5/5. (Id.). Mr. Gadlage was unable to heel, toe, or tandem walk or to squat. (Id.). Reflexes were normal. (Id.). Dr. Stauffer's impression was "gout with multiple joint involvement," and he concluded that Mr. Gadlage could lift 20 pounds occasionally and 10 pounds frequently, stand or walk at least two hours in an eight-hour day, would have difficulty pushing or pulling with his lower extremities due to foot pain, would have difficulty climbing ladders, ropes, or scaffolds, and could not do more than occasional stooping, kneeling, crouching or crawling. (Tr. 162-3).

State agency physicians who reviewed the record in January and March 2004 agreed with Dr. Stauffer's restrictions, with the exception of standing and walking. (Tr. 358-76). One of the physicians, Dr. Kenneth Phillips, noted that there was no clear explanation of the plaintiff's reported inability to heel-, toe-, or tandem-walk or to squat, and that there was no evidence of nerve root compression or neurological deficit related to the back. (Tr. 367). He opined that Dr. Stauffer's limitations in standing and walking were not consistent with the overall medical evidence presented. (Id.). Therefore, the state agency sources found the plaintiff able to stand and walk approximately six hours in an eight-hour day. (Tr. 359, 370).

Although the plaintiff had a spinal fusion a few months later, his physicians did not give any permanent functional restrictions. (Tr. 397). The ALJ adopted the

9

standing/walking limitations of the state agency reviewers, a choice which the plaintiff challenges on appeal. However, the ALJ noted that by January 10, 2005 Mr. Gadlage told his treating neurosurgeon, Dr. Scott, that he was walking for 30 minutes a day and did not need a cane to do so. By March 28, 2005, Mr. Gadlage stated that he was able to walk and had walked up to seven miles in one day. (Tr. 420). Dr. Scott's examination showed that Mr. Gadlage was stiff, but was able to flex 60 to 80 degrees, could rise on his heels and toes, had a negative straight leg raising test, had no atrophy, and had a normal gait. (Id). Dr. Scott's impression was "chronic mechanical low back syndrome, improved" and he did not ask the plaintiff to return for another six months, in the meantime encouraging daily low impact aerobic exercises. (Id.). The ALJ also noted that there had been no recent exacerbations of the plaintiff's gout since April 12, 2004, at which time his uric acid level was only slightly elevated. (Tr. 416). Combining the improvement in the most recent neurosurgeon's note with a lack of evidence of continuing flareups of gout, the ALJ concluded that there was no basis to follow the standing and walking restrictions listed by Dr. Stauffer. (Tr. 18). Given the doubt cast on Dr. Stauffer's standing and walking restrictions by the state agency reviewers, in addition to these factors, the Court concludes that there is substantial evidence to support the ALJ's conclusion.

10

Gadlage

The plaintiff also notes that both Dr. Stauffer and the state agency physicians placed limitations on pushing and pulling with the lower extremities which were not followed by the ALJ. As the Commissioner points out, however, there is no evidence that the plaintiff's former job as a telemarketer required pushing and pulling with lower extremities. Section 299.357-014 of the Dictionary of Occupational Titles (DOT), captioned "Telephone Solicitor," does not indicate that pushing or pulling with lower extremities is required (Tr. 91).The plaintiff did not provide any information to the contrary, and testified that he was fired from the telemarketing job in September of 2003 because of a dispute over health insurance, rather than an inability to perform the work (e.g. Tr. 70, 439-40). Therefore, any failure to include such a restriction was, at most, harmless error.

The plaintiff's main argument on appeal concerns the June, 2004 diagnosis of carpal tunnel syndrome in the right hand. The plaintiff asserts that it was error not to find his condition to be a "severe" impairment. As noted previously, this condition had been diagnosed by Dr. Rahul Dixit (Tr. 432), but this physician apparently deferred treatment to Dr. William Brooks, the neurosurgeon who initially treated Mr. Gadlage for low back pain and who had referred him to Dr. Dixit for an epidural steroid injection (Tr. 428). Although there are no follow-up records from Dr. Dixit, Dr. Brooks wrote a letter dated July 15, 2004 to the plaintiff's family physician, Dr. Richard Park, which stated that the plaintiff's back pain was "incapacitating while his

11

Gadlage

carpal tunnel was "merely an [annoyance]." (Tr. 427). Dr. Park had noted on June 22, 2004 that Dr. Dixit telephoned his office and said that the EMG/NCV showed "bilateral" carpal tunnel syndrome, but he would refer the patient back to Dr. Brooks first to see if he wanted a repair. (Tr. 413). Later, on August 31, 2004, Dr. Park wrote that Dr. Brooks had described the carpal tunnel syndrome as "mild." (Tr. 412). For these reasons, the ALJ declined to find that the condition was "severe." (Tr. 17).

Although anything more than "slight abnormality" is considered to be a "severe" impairment in the Sixth Circuit, Farris v. Secretary of Health and Human Services, 773 F.2d 85, 90 (6th Cir. 1985), the plaintiff failed to show any functional restrictions flowing from his carpal tunnel diagnosis.  None of the examining physicians, particularly Dr. Dixit, listed any functional restrictions, and even though Dr. Stauffer had found a slightly reduced grip in the right hand, he specified that the plaintiff would have no limitation in his ability to manipulate objects. (Tr. 162-3). Consequently, this argument must also fail.

The decision will be affirmed.

This the ___20___ day of December, 2006.

G. WIX UNTHANK
SENIOR JUDGE

12